IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| Jose G. Munoz, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No.: RDB-11-02693 |
| Baltimore County, Maryland, | * | |
| Kevin Kamenetz, Individually and in Official Capacity as Baltimore County Executive, | * | |
| | * | |
| George E. Gay, Individually and in Official Capacity as Director of Baltimore County Office of Human Resources, | * | |
| | * | |
| | * | |
| Baltimore County Fire Department, | * | |
| and | * | |
| John J. Hohman, Individually and in Official Capacity as Fire Chief, Baltimore County Fire Department, | * | |
| | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## <u>Memorandum Opinion</u>

This action arises out of a complaint filed by Jose G. Munoz ("Plaintiff" or "Munoz") against Defendants Baltimore County, Maryland ("the County"); Kevin Kamenetz ("Kamenetz"), individually and in his official capacity as Baltimore County Executive; George E. Gay ("Gay"), individually and in his official capacity as Director of the Baltimore

County Office of Human Resources; the Baltimore County Fire Department ("BCFD") and John J. Hohman ("Hohman"), individually and in his official capacity as Fire Chief of the Baltimore County Fire Department.   The Plaintiff sues Defendants for (1) disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111 *et seq.*, and retaliation under the ADA, 42 U.S.C. § 12203 (Count I); (2) disability discrimination under Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.* (Count II); and (3) wrongful discharge in violation of public policy under Maryland state law (Count III).

Pending before this Court is Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, Alternatively, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (ECF No. 6).   Upon review, the Court finds that no hearing is necessary.   *See* Local Rule 105.6 (D. Md. 2011).   For the reasons that follow, Defendants' Motion to Dismiss (ECF No. 6) is GRANTED IN PART and DENIED IN PART.   Specifically, the Motion is GRANTED as to the disability discrimination claims in Counts I and II, as to the retaliation claim under the ADA against the Baltimore County Fire Department and all individually named Defendants in Count I, and as to the wrongful discharge claim against the Baltimore County Fire Department and all individually named Defendants in Count III; and is DENIED as to the retaliation claim under the ADA against Baltimore County in Count I and as to the wrongful discharge claim against Baltimore County in Count III.   Moreover, Plaintiff's claims against the Baltimory County Fire Department and all individually named Defendants are DISMISSED WITH

PREJUDICE.   Finally, Plaintiff's disability discrimination claims against Baltimore County are DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

In ruling on a Rule 12(b)(6) motion to dismiss, the factual allegations in the plaintiff's complaint must be accepted as true and those facts must be construed in the light most favorable to the plaintiff.  *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

On or about August 30, 2010, the Plaintiff, who was then an Emergency Medical Technician and Firefighter employed by the Baltimore County Fire Department ("BCFD"), hyper-extended his right knee during an official training exercise.   Compl. ¶ 10.   On September 28 and 30, 2010, Plaintiff visited Dr. Deniece Barnett-Scott to address his "continuing pain," and she told him that "there was some bruising and swelling around his knee, but that he could return to work without treatment."  *Id.* ¶ 12.   When the Plaintiff's pain was still continuing sometime later, he consulted Dr. Craig Matthews, an orthopedic surgeon, and submitted the bill to the County for payment under Maryland Workers' Compensation.  *Id.* ¶ 13.

The County arranged for the Plaintiff to receive an independent medical examination, which Dr. Kenneth Tepper provided on November 2, 2010.  *Id.* ¶ 14.   Dr. Tepper stated that the "pain and buckling of [Plaintiff's] knee was a result of a preexisting injury due to degenerative arthritic changes and prior injury to his medial meniscus."  *Id.*   As a result, in a letter dated November 18, 2010, the County denied Plaintiff workers' compensation coverage and refused to pay for his previous visit to Dr. Matthews .  *Id.* ¶¶ 14–15.

On November 22, 2010, Plaintiff returned to Dr. Matthews.  Compl. ¶ 15.  He paid for his previous visit using his own insurance and sought further medical evaluation.  *Id.*  Dr. Matthews stated that "Plaintiff required surgery to repair a torn medial meniscus."  *Id.* ¶ 16.  Plaintiff obtained approval for his Family and Medical Leave Act request for January 21, 2011 through February 14, 2011 and had surgery on January 21, 2011.  *Id.* ¶¶ 16–17.  After his surgery, Plaintiff was cleared for light duty on January 26, 2011 and for full duty on February 9, 2011.  *Id.* ¶ 17.  He returned to work "early from his medical leave."  *Id.*

Around that time, Plaintiff also retained counsel to contest the County's refusal to grant him workers' compensation.  *Id.* ¶ 18.  Through counsel, Plaintiff requested a hearing with the Maryland Workers' Compensation Commission ("the Commission") "with respect to the causal relationship [between] Plaintiff's knee problems [and] his injuries sustained while engaged in the training exercise."  *Id.* ¶ 18.  On February 3, 2011, Plaintiff attended a hearing before the Commission.  *Id.* ¶ 19.  On cross-examination, counsel for the County asked Plaintiff about his "past medical history," and Plaintiff testified that he had had surgery to repair his lateral meniscus in 1994.  *Id.* ¶¶ 19–20.  Counsel then asked Plaintiff why he had failed to disclose that surgery on his job application, which had "asked if he had [had] any prior surgeries."  *Id.* ¶¶ 19–20.  Plaintiff testified that he had forgotten about that surgery, as it had happened fifteen years before he was filling out the application for employment.  Compl. ¶ 20, 22.

On February 24, 2011, the Maryland Workers' Compensation Commissioner concluded that Plaintiff's injury was work-related and ordered the County to pay for Plaintiff's medical bills.  *Id.* ¶ 23.  Approximately one week later, on or about March 3, 2011,

Assistant Fire Chief Mark Weir ("Weir") met with the Plaintiff and ordered him to resign or be terminated for "falsifying his employment application." *Id.* ¶ 24.  Plaintiff insisted that he had made an honest mistake, and he refused to resign. *Id.*  Weir then terminated Plaintiff, stating that Plaintiff "should have 'known better' than to have filed a Workers Compensation claim." *Id.*

After he was terminated, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation and disability discrimination on the basis of a perceived disability in violation of Title VII of the Civil Rights Act and the ADA. Compl. ¶ 7.  On June 29, 2011, the EEOC issued Plaintiff a right-to-sue notice after rejecting his claim. *Id.* ¶ 8.

On September 19, 2011, Plaintiff filed the timely Complaint in this case, alleging disability discrimination under the ADA and the Rehabilitation Act, retaliation under the ADA, and a claim of wrongful discharge in violation of public policy under Maryland state law.  Defendants have filed the subject Motion to Dismiss or, Alternatively, for Summary Judgment, in which they maintain that (1) the Baltimore County Fire Department is not a legal entity subject to suit, (2) none of the individually named Defendants is individually liable, and (3) the Complaint fails to state a claim upon which relief can be granted.  Defs.' Mot. ¶¶ 1–3.

## STANDARDS OF REVIEW

### I.   RULE 12(B)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction challenges a court's authority to hear the matter brought

by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  Under Rule

12(b)(1), a party may advance a facial challenge, asserting that the allegations in the

complaint are insufficient to establish subject-matter jurisdiction, or a factual challenge,

asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United*

*States*, 585 F.3d 187, 192 (4th Cir. 2009) (citations omitted).  With respect to a facial

challenge, the court will grant a motion to dismiss for lack of subject-matter jurisdiction

"where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis*, 367

F. Supp. 2d at 799 (citations omitted).  Where the challenge is factual, "the district court is

entitled to decide disputed issues of fact with respect to subject matter jurisdiction."  *Kerns*,

585 F3d at 192.   "[T]he court may look beyond the pleadings and 'the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to

determine whether in fact subject matter jurisdiction exists.'"  *Khoury v. Meserve*, 268 F. Supp.

2d 600, 606 (D. Md. 2003) (citation omitted).  The court "may regard the pleadings as mere

evidence on the issue and may consider evidence outside the pleadings without converting

the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398

(4th Cir. 2004); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services*, 94 F.

Supp. 2d 680, 684-85 (D. Md. 2000).  The plaintiff carries the burden of establishing subject

matter jurisdiction.  *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## II.   <u>RULE 12(B)(6)</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) of

the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state

a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  In ruling on such a motion, this Court is guided by the Supreme Court's instructions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) which "require complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, __ F.3d __, __, 2012 WL 2589229, at *2 (4th Cir. July 5, 2012) (citation omitted).  The Supreme Court's *Twombly* decision articulated "[t]wo working principles" courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.

First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim.)  Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.  Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, __ (4th Cir. May 14, 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove*

an element of the claim.  It need only *allege facts* sufficient to *state* elements of the claim.")
(emphasis in original) (internal quotation marks and citation omitted).  In short, a court must
"draw on its judicial experience and common sense" to determine whether the pleader has
stated a plausible claim for relief." *Iqbal*, 556 U.S. at 664.

## ANALYSIS

I.   <u>LIABILITY OF THE BALTIMORE COUNTY FIRE DEPARTMENT</u>

The Defendants argue that all claims against the Baltimore County Fire Department
("BCFD") must be dismissed because the BCFD is not a legal entity subject to suit. Plaintiff
concedes on this point.  Pl.'s Opp. to Defs.' Mot. Dismiss at 6.  The BCFD is a department
of the County established and administered by the County; no law confers independent legal
status on the BCFD.  Charter of Balt. Co., Md., Art. 5, Div. 1, § 504; *see also id.* Div. 3,
Subdiv. 10, § 542 (providing for the appointment, assignment of duties, and removal of fire
chiefs).  Therefore, an action arising from the alleged misconduct of employees of the BCFD
must be interpreted as a suit against the corporate entity of Baltimore County, Maryland, so
known in its charter.  *Id.*, Art. 1 § 101; *see County Council for Montgomery County v. Supervisor of
Assessments of Montgomery County*, 332 A.2d 897, 900–01 (Md. 1975) ("[I]t is necessary that the
appeal be maintained in the name of the corporate entity . . . .  Since the County Council is
not the corporate entity, an appeal may not be maintained in its name.").  As a suit against
the BCFD must be interpreted as a suit against the County, and the County is a named
Defendant in this suit, Plaintiff's claims against the BCFD are DISMISSED WITH
PREJUDICE.

## II.   FEDERAL DISABILITY DISCRIMINATION CLAIMS AND RETALIATION CLAIM

### A.   LIABILITY OF INDIVIDUALLY NAMED DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES

The Defendants argue that none of the individually named Defendants is liable in his individual capacity under the ADA and the Rehabilitation Act.  The Court of Appeals for the Fourth Circuit has held that there is no individual liability under the ADA.  *Jones v. Sternheimer*, 387 F. App'x 366, 368 (4th Cir. 2010) (citing *Baird ex rel. Baird Rose*, 192 F. 3d 462, 472 (4th Cir. 1999)) (same).  Additionally, this Court has held that supervisors are not individually liable under the Rehabilitation Act.  *Ransome v. Barnhart*, CCB-03-2532, 2005 WL 1075370 at *4 (D. Md. May 5, 2005) ("Under Title VII, and therefore the Rehabilitation Act as well, supervisors are not liable in their individual capacities for violations of the statute.") (internal citations omitted).  *See also Betts v. Rector & Visitors of Univ. of Va.*, 145 F. App'x 7, 10 (4th Cir. 2005) (noting that discrimination claims under the ADA and the Rehabilitation Act should be treated the same) (citations omitted).   Accordingly, Plaintiff's ADA and Rehabilitation Act claims against Kamenetz, Gay, and Hohman in their individual capacities are DISMISSED WITH PREJUDICE.

### B.   LIABILITY OF INDIVIDUALLY NAMED DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Additionally, the Defendants contend that this Court must dismiss all ADA and Rehabilitation Act claims against the individually named Defendants in their official capacity because it is possible to sue the County directly, which the Plaintiff has done.

Although "[s]uits against government officials in their 'official capacity' have traditionally been permitted to avoid Eleventh Amendment and sovereign immunity

problems that might arise if a plaintiff were to sue a government entity directly . . . , [t]here is no need for such 'official capacity' litigation in the case of . . . entities that are themselves subject to suit." *Bakal v. Ambassador Const.*, JSM-94-584, 1995 WL 447784 at *4 (S.D.N.Y. July 28, 1995) (citations omitted).  Accordingly, this Court has noted in a Title VII case against the Anne Arundel County Board of Education and three employees individually that if the Plaintiff had sued the employees in their official capacities, "this would be treated as a suit against the County and would be redundant, since the Board [would] remain a defendant under count III."  *Henderson v. Gilbert*, JFM-06-1284, 2006 WL 1966797 at *2, n. 1 (D. Md. July 10, 2006).  Furthermore, in a recent decision in a discrimination case arising under the ADA, this Court noted, before granting summary judgment for the defendants, that "Plaintiff has sued the government agency and the redundant claim against [the superintendent of schools of Charles County] in his official capacity should be dismissed if any portion of the complaint goes forward."  *Fink v. Richmond*, DKC-07-0714, 2009 WL 3216117 at *4 (D. Md. Sept. 29, 2009) *aff'd*, 405 F. App'x 719 (4th Cir. 2010).

As the Plaintiff has filed claims against Baltimore County, his claims against the individual supervisors employed by the County in their official capacities are redundant. Therefore, the Plaintiff's ADA and Rehabilitation Act claims against each individual defendant in his official capacity are DISMISSED WITH PREJUDICE.

## C.   DISABILITY DISCRIMINATION

Further, the Defendants contend that the Plaintiff fails to state a claim of disability discrimination under either the ADA or the Rehabilitation Act.  When a plaintiff presents a claim for employment discrimination with no direct evidence of discriminatory conduct, the

case is "subject to the burden-shifting scheme of *McDonnell Douglas.*"  *Webster v. Henderson*, 32

F. App'x 36, 40–41 (4th Cir. 2002) (citations omitted) (*see McDonnell Douglas Corp. v. Green*,

411 U.S. 792, 802 (1973); *Ennis v. Nat'l Assoc. of Business & Educ. Radio*, 53 F.3d 55, 58 (4th

Cir. 1995).  Thus, a plaintiff must first establish a *prima facie* case of disability discrimination.

*McDonnell Douglas Corp.*, 411 U.S. at 802.  If the plaintiff can establish a *prima facie* case, the

burden then shifts to the employer to provide a non-discriminatory reason for the adverse

action.  *Id.*  If the employer provides a non-discriminatory reason for the adverse action,

then the burden finally shifts back to the plaintiff to demonstrate that that reason is

pretextual.  *Id.* at 804.

As claims of disability discrimination under the ADA and the Rehabilitation Act "are

generally construed to impose the same requirements," the elements comprising a *prima facie*

case for either cause of action are essentially the same.  *Betts*, 145 F. App'x at 10 (citing *Baird*,

192 F.3d at 468)).  *See also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474,

498 n. 17 (4th Cir. 2005).  Therefore, to establish a *prima facie* case under the ADA or the

Rehabilitation Act, a plaintiff must demonstrate that (1) he was subject to an adverse

employment action, (2) he was a qualified individual with a disability under the ADA, (3) his

performance at the time of the discharge met the legitimate expectations of his employer,

and (4) "his discharge occurred under circumstances that raise a reasonable inference of

unlawful discrimination."  *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001)

(*citing Ennis*, 53 F.3d at 58 (4th Cir. 1995).

Despite the general congruence of the ADA and the Rehabilitation Act, there are

several statutory differences between them.  First, the ADA requires the plaintiff to have

exhausted the administrative process at the EEOC before bringing suit. *Rohan v. Networks Presentation, LLC.*, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (citations omitted), *aff'd*, 375 F.3d 266 (4th Cir. 2004). Second, the plaintiff must show a different "causative link between discrimination and adverse action" under the two acts. *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 370 (D. Md. 2011) (quoting *Baird*, 192 F.3d 462, 469 (4th Cir.1999)). Under the ADA, "a plaintiff need only prove discrimination by reason of disability. . . . [b]ut, a successful Rehabilitation Act claim requires a showing of discrimination *solely* by reason of disability." *Paulone*, 787 F. Supp. 2d at 370–71 (citations and internal quotation marks omitted). The third difference is that "to show a violation of the Rehabilitation Act by a state, local, or private entity, a plaintiff must demonstrate that the "program or activity" at issue receives federal funding." *Id.* at 371 (quoting 29 U.S.C. § 794(a)).

As it is undisputed that the Plaintiff was discharged and that the Plaintiff exhausted his administrative remedies before litigating, the examination of Plaintiff's disability discrimination claims under the ADA and the Rehabilitation Act focuses on the remaining elements.

### 1.   Qualified Individual with a Disability

The Defendants contend that the Plaintiff is not a qualified individual with a disability. A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). Thus, to establish that he is a qualified individual, the Plaintiff must prove that (a) he was disabled when discharged and (b) he was qualified to perform the essential functions of his position. *Id.*

### a.    Whether Plaintiff Properly Alleges That He Was Disabled

The Defendants argue that the Plaintiff has not stated a claim that he was disabled. When examining whether a plaintiff is disabled, this Court requires the plaintiff to demonstrate that he " "(A) [has] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) [has] a record of such an impairment; or (C) [has been] regarded as having such an impairment." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 (4th Cir. 2004) (citing 42 U.S.C. § 12102(2)) (alterations in *Rohan*). *See also Bailey v. AmeriGas Propane, Inc.*, 2012 WL 346632 at *3 (D. Md. Jan. 31, 2012) (citing *id.*).   Munoz seeks to state a claim under the third, "regarded as" prong, contending that he was "perceived as" having an impairment "due to his knee injuries and any medical limitations that he have [*sic*] or may have sustained as a result of an accidental injury on the job." Compl. ¶ 30.

Since an amendment that took effect on January 1, 2009, a claim under the "regarded as" prong no longer requires a plaintiff to show an actual impairment or a record thereof. ADA Amendments Act of 2008, Pub. L. 11325, 122 Stat. 3553, *amending* 42 U.S.C. § 12102(3).   *See also Bailey*, 2012 WL 346632 at *3 n. 11.   As there is no requirement of an actual impairment, the Plaintiff's assertion that his employer "perceived" him as disabled is sufficient to allege that he was disabled for the purposes of the ADA and the Rehabilitation Act.

### b.    Whether Plaintiff Properly Alleges That He Was Qualified to Perform the Essential Functions of His Position

The Plaintiff must also establish that he was qualified to perform the essential functions of his position.   First, the plaintiff must define the essential functions of his

position by showing the court which functions "bear more than a marginal relationship to the job at issue." *Shin v. Univ. of Maryland Med. Sys. Corp.*, 369 F. App'x 472, 480 (4th Cir. 2010) (quoting *Tyndall v. Nat'l Educ. Ctrs., Inc. of Cal.,* 31 F.3d 209, 213 (4th Cir. 1994) (citations omitted)).  Next, a plaintiff must show that he was qualified by demonstrating that he "possess[ed] the skills necessary" to perform the essential functions and was "willing and able to demonstrate these skills." *Tyndall*, 31 F.3d 209, 213 (4th Cir. 1994).

The Plaintiff states that he "can perform all of the essential functions of his position as an EMT Firefighter in the BCoFD without limitation and without any reasonable accommodation" and contends that he is a "qualified individual."  Compl. ¶¶ 31, 34, ECF No. 1; *see also id.* ¶ 40.  However, he does not go further to allege any facts to establish what makes these functions "essential" or to show that he possessed the skills, willingness, and ability to perform them properly.  As "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), Plaintiff's bare assertions that he "can perform all of the essential functions" and is a "qualified individual" fail to state a claim that he is qualified. Compl. ¶¶ 31, 34.  Therefore, Plaintiff fails to allege that he is a qualified individual with a disability under the ADA and the Rehabilitation Act.

## 2. Legitimate Expectations

Even if the Plaintiff had sufficiently alleged that he was a qualified individual under the ADA and the Rehabilitation Act, his disability discrimination claims would still be dismissed because he has not sufficiently alleged that he met his employer's legitimate expectations at the time of his termination.  The Fourth Circuit has directed that the inquiry

14

into the "legitimate expectations" factor be distinct from the inquiry into the "essential functions of a job." *See Ennis*, 53 F.3d 55, 61–62.  The Fourth Circuit has also stated that "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans*); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (same).  In *Ennis*, the court reviewed extensive evidence provided by the employer regarding the employee's job performance, such as annual performance evaluations, memoranda to the personnel file, and communications about her conduct, to conclude that she did not meet the employer's legitimate expectations.  53 F.3d at 61–62.

Although Munoz attempts to show that he could perform all essential functions of his position, he does not argue that he met the legitimate expectations of his employer.  As Munoz does not allege that his performance met the legitimate expectations of his employer, he fails to state a disability discrimination claim under either the ADA or the Rehabilitation Act.

### 3.    Rehabilitation Act's Federal Funding Requirement

Even if Plaintiff had shown he could establish all other elements of his Rehabilitation Act claim, that claim would be dismissed for failure to allege that the BCFD receives federal funding.  As the Fourth Circuit has noted, "to show a violation of the Rehabilitation Act by a state, local, or private entity, a plaintiff must demonstrate that the 'program or activity' at issue receives federal funding." *Paulone*, 787 F. Supp. 2d at at 371 (quoting 29 U.S.C. § 794(a)).  As Plaintiff does not allege that the BCFD receives federal funding, his claim under the Rehabilitation Act must be dismissed.  Accordingly, Plaintiff fails to state claims of

disability discrimination under the ADA and the Rehabilitation Act, and these claims are DISMISSED WITHOUT PREJUDICE.

### D.   RETALIATION CLAIM UNDER THE ADA

Plaintiff's Complaint complicates this Court's review of his claims, as it is, as aptly noted in the Defendants' Reply (ECF No. 9), "confusing in a number of respects."  Defs.' Reply in Supp. of Mot. Dismiss at 2, ECF No. 9.  It appears that the Plaintiff presents his case with many different legal theories, and as a result, it is difficult to determine on which theories he relies.  For example, the Plaintiff's Response in Opposition at 4, ECF No. 6-1 refers to a Title VII violation, but the version of the Complaint submitted to this Court only addresses the ADA and the Rehabilitation Act.  Opp. at 4.  Additionally, the Complaint states that the Plaintiff filed charges with the EEOC on the basis of "retaliation" in violation of Title VII and the ADA, but while the Plaintiff alleges a wrongful discharge claim in violation of public policy that is essentially a claim of retaliation, the Plaintiff does not invoke the ADA's retaliation provision explicitly as the basis for a claim.  The Plaintiff's most plausible claim, however, focuses on the Defendants' retaliation against him for filing a workers' compensation claim.  Specifically, the Plaintiff states that "[i]n terminating Munoz, [Assistant Fire Chief] Weir stated to him that he should have 'known better' than to have filed a Workers Compensation claim."  Compl. ¶ 24.

Plaintiff's Complaint does not assert retaliation under the ADA explicitly.  Although the Fourth Circuit does not appear to have addressed the situation in which the plaintiff, represented by counsel, has not identified the supporting legal theory for a cause of action identified in the complaint, other courts have found that a failure to cite the correct legal

theory, or the citation of the incorrect legal theory, is not fatal to a claim.  For example, in *Morales-Vallenanes v. Potter*, the Court of Appeals for the First Circuit noted that "[a] complaint need not point to the appropriate statute or law in order to raise a claim for relief under Rule 9 . . . . [A] complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim." *Morales-Vallellanes v. Potter*, 339 F.3d 9, 14 (1st Cir. 2003) (subsequent appeal on unrelated issue, 605 F.3d 27 (1st Cir. 2010)) (quoting *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992); citing *Fitzgerald v. Codex Corp.*, 882 F.2d 586, 589 (1st Cir. 1989); *and Simonton v. Runyon*, 232 F.3d 33, 36–37 (2d Cir. 2000)).  In *Morales-Vallenanes*, the court noted that, despite the plaintiff's "failure to cite any statutory basis for relief" in his complaint, the Defendants were given adequate notice that the Plaintiff was filing a Title VII claim when the complaint stated facts consistent with a claim under Title VII and referenced the Plaintiff's filing of Title VII charges with the EEOC.  *See Morales-Vallenanes*, 339 F.3d at 15.

Additionally, the Seventh Circuit has held that a complaint must not necessarily "plead law as well as fact" to survive a Rule 12(b)(6) motion to dismiss.  *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–78 (7th Cir. 1992) (finding that, when plaintiff pled his claim under state law but pled facts sufficient to raise claims under ERISA, dismissal for failure to amend the complaint simply to "invoke ERISA" was improper).  *See also Tolle*, 977 F.2d at 1134–35 (finding that the "allegations, although never mentioning Sections 503 and 502(a)(3), sufficiently raise a claim of relief under those Sections") (citing *Bartholet*, 953 F.2d at 1078).

Additionally, in  *J.J. Crewe & Son, Inc. Profit Sharing Plan v. Talbot*, ELH-11-2871, 2012

WL 1994778 at *8   (D. Md. June 1, 2012), this Court consolidated two "counts" into one

when a count that invoked one legal theory was "better understood" as invoking another:

> Preliminarily, I note that, although plaintiffs have separated their Complaint
> into two "counts" (one for a constructive trust or equitable lien, the other for
> unjust enrichment), the Complaint is perhaps better understood as asserting a
> single cause of action for unjust enrichment, with two requests for relief: a
> request for imposition of a constructive trust or equitable lien (Count I), and
> a request for restitution in the form of an award of money damages (Count
> II).

Plaintiff's inartfully drafted Complaint is similarly better understood as asserting a claim for

retaliation under the ADA.

A claim for retaliation with no direct evidence of discriminatory conduct is "subject

to the burden-shifting scheme of *McDonnell Douglas*."   *Webster v. Henderson*, 32 F. App'x 36,

40–41 (4th Cir. 2002) (citations omitted) (*see McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973); *Ennis v. Nat'l Assoc. of Business & Educ. Radio*, 53 F.3d 55, 58 (4th Cir.1995).   To

establish a *prima facie* case of retaliation under the ADA, the Plaintiff must demonstrate (1)

that he engaged in a protected activity, (2) that his employer took a "materially" adverse

action against him, and (3) that a causal connection existed between the activity and the

adverse action.   *Cepada v. Bd. of Educ. of Baltimore County*, 814 F. Supp. 2d 500, 514–15 (D. Md.

2011) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *and Bryant v.

Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)).   This Court has held that an

inference of a causal connection exists where the adverse action occurs "shortly after

learning of the protected activity."   *Cepada*, 814 F. Supp. 2d at 515 (citing *Price v. Thompson*,

380 F.3d 209, 213 (4th Cir. 2004)).

As there is no dispute as to whether Plaintiff filed a workers' compensation claim or

whether he was discharged, it is clear that he engaged in a protected activity and that his employer took a "materially" adverse action against him. *Cepada*, 814 F. Supp. 2d at 514. Additionally, the Plaintiff alleges facts sufficient to establish a causal connection. Plaintiff asserts in the State wrongful termination count that "Defendants[] terminat[ed] Plaintiff's employment solely because he filed a claim for Workers' Compensation." Compl. ¶ 55. As support for this allegation, the Plaintiff incorporates by reference the statement that "[i]n terminating Munoz, [Assistant Fire Chief] Weir stated to him that he should have 'known better' than to have filed a Workers Compensation claim." *Id.* ¶ 24. The Plaintiff also contends that the adverse action occurred against him shortly after his employer learned of the protected activity, as he was terminated on March 3, 2011, only seven days after obtaining a workers' compensation order, on February 24, 2011. Accordingly, the Plaintiff has met his initial burden of pleading, and the Defendants next bear the burden to provide a legitimate, non-retaliatory reason for the discharge.

The Defendants maintain that "Plaintiff was discharged because he 'falsified [his] preemployment health questionnaire." Defs.' Mot. at 11 (quoting Ex. 1, ECF No. 6-2). The Plaintiff contends that this is not a legitimate reason because, according to the Plaintiff, he (1) did not intentionally omit his prior knee surgery from his responses and (2) was not required by Maryland law to answer that question. However, whether the Plaintiff intended to omit those responses or whether he was required by Maryland law to respond to them is irrelevant, as long as the BCFD honestly believed that the Plaintiff was responsible for omitting them and that his omission violated a legitimate work rule. *See Pridgen v. Department of Public Works/Bureau of Highways*, WDQ-08-2826, 2009 WL 4726619 at *4 (D. Md. Dec. 1,

2009) (finding that the employer's honest belief that the employee violated a legitimate work rule by failing to disclose past injuries was a legitimate, non-retaliatory reason for termination), *aff'd sub nom. Pridgen v. Dep't of Pub. Works, Bureau of Highways*, 401 F. App'x 824 (4th Cir. 2010). By asserting that the BCFD honestly believed the Plaintiff violated a work rule by falsifying answers on his employment application, the Defendants satisfy their burden to provide a legitimate, non-retaliatory reason for the discharge, and the burden finally shifts back to the Plaintiff to show that the stated reason is pretextual.

To demonstrate pretext when a plaintiff is terminated allegedly because he failed to respond to a questionnaire asking him to disclose past injuries, the plaintiff must "show that the decision maker . . . knew about [the undisclosed] injuries" for a substantial amount of time before terminating the plaintiff, as this would suggest that the failure to disclose was not the real reason for the discharge. *Pridgen*, WDQ-08-2826, 2009 WL 4726619 at *4 (finding no pretext where omission on medical questionnaire was discovered the day before employee was discharged) (citing *Koski v. Standex Int'l Corp.,* 307 F.3d 672 (7th Cir. 2002)).

In Munoz's County-mandated visit to Dr. Kenneth Tepper on November 2, 2010, Tepper took note of a "preexisting injury due to degenerative arthritic changes and prior injury to [Munoz's] medial meniscus," which the County used to deny Plaintiff workers' compensation coverage on November 18, 2010. Compl. ¶¶ 14–15. Viewing the facts and all reasonable inferences in the light most favorable to the Plaintiff, it is apparent that Defendants "knew about [the undisclosed] injuries" between November 2 and November 18, 2010—four months before Plaintiff's termination on March 3, 2011. *Pridgen*, WDQ-08-2826, 2009 WL 4726619 at *4. As the Defendants knew of the undisclosed injuries four

months prior to firing the Plaintiff, he meets his burden to establish pretext, and his claim

demonstrates that a causal connection may have existed between the activity and the adverse

action.  Accordingly, for the above reasons, Plaintiff successfully states a claim of retaliation

under the Americans with Disabilities Act against Baltimore County.

## III.   WRONGFUL DISCHARGE CLAIM UNDER MARYLAND STATE LAW

The Plaintiff additionally alleges a claim of wrongful discharge in violation of public

policy, on the basis of Defendants' alleged violation of Maryland Code, Labor and

Employment § 9–1105.[1]  Compl. ¶¶ 45–57.  Although this is a claim of Maryland state law,

28 U.S.C. § 1367 grants district courts "supplemental jurisdiction over all other claims that

are so related to claims in the action within [the courts'] original jurisdiction that they form

part of the same case or controversy under Article III of the United States Constitution."

### A.   LIABILITY OF INDIVIDUALLY NAMED DEFENDANTS

The Defendants contend that none of the individually named Defendants is liable

under Maryland Code, Labor and Employment § 9–1105 because they are not "employers"

---

[1]  Plaintiff also states that he did not knowingly falsify the answers on the employment questionnaire and that, at any rate, he could not be required to disclose his prior injury and surgery because, pursuant to Maryland Code, Labor and Employment § 3–701, an employer "may not require an applicant for employment to answer an oral or written question that relates to a physical, psychiatric, or psychological disability, illness, handicap, or treatment unless the disability, illness, handicap, or treatment has a direct, material, and timely relationship to the capacity or fitness of the applicant to perform the job properly."  Compl. ¶¶ 47–51.

However, Plaintiff does not allege that his failure to disclose his injury on the questionnaire was a cause for his dismissal; indeed, such a reading would contradict his statement only four paragraphs later that "[b]ut for the filing of the his claim for Workers' Compensation . . . , Plaintiff would not have been terminated" and his allegation in the following paragraph that "Defendants' terminat[ed] . . . Plaintiff's employment *solely* because he filed a claim for Workers' Compensation violates Maryland State Law."  *Id.* ¶¶ 54, 55 (emphasis added).  Accordingly, this Court interprets his allegation of wrongful discharge in violation of public policy to allege that the Plaintiff was wrongfully fired for filing a workers' compensation claim, in violation of § 9–1105.

of the Plaintiff under the meaning of Maryland Code, Labor and Employment title 9, Workers' Compensation.   Under § 9–1105, an employer may not discharge any "covered employee from employment solely because the covered employee files a claim for compensation under this title."   According to § 9–201, "[t]his title applies to the following employers: (1) each person who has at least 1 covered employee; and 2) each governmental unit or quasi-public corporation that has at least 1 covered employee."   Additionally, § 9–202 states that "[a]n individual, including a minor, is presumed to be a covered employee while in the service of an employer under an express or implied contract of apprenticeship or hire." At first glance, although Baltimore County would appear to fit the above definition, Baltimore County Executive Kamenetz and Director of the Baltimore County Office of Human Resources Gay would not.

In the context of Maryland workers' compensation, Maryland state courts have examined the following criteria to determine when an employer-employee relationship exists:

(1) the power to select and hire the employee,
(2) the payment of wages,
(3) the power to discharge,
(4) the power to control the employee's conduct, and
(5) whether the work is part of the regular business of the employer.

*Imbraguglio v. Great Atl. & Pac. Tea Co., Inc.*, 671 A.2d 72, 76 (Md. App. 1996) *aff'd,* 697 A.2d 885 (Md. 1997) (citations omitted).   The "decisive test is whether the employer has the right to control and direct the employee in the performance of the work and in the manner in which the work is done."   *Id.* (quotations and internal citations omitted).   Although Baltimore County clearly fits this definition of "employer," Kamenetz, as Baltimore County Executive, and Gay, as Director of the Baltimore County Office of Human Resources, did

not meet any of the five criteria and were certainly not in a position "to control and direct the [Plaintiff] in the performance of [his] work and in the manner in which [his] work [wa]s done." Therefore, it is clear that the Plaintiff was not in an employer-employee relationship with Kamenetz or Gay.

Additionally, in cases interpreting the statutory definition of an "employer" in the Maryland Wage Payment and Collection Law, Md. Code, Labor and Employment §§ 3–501, *et seq.* ("MWPCL"), this Court has held that a supervisor is not an "employer." *Watkins v. Brown*, 173 F. Supp. 2d 409, 415 (D. Md. 2001). *Accord Khalil v. Subway at Arundel Mills Office Park, Inc.*, CIV. CCB-09-158, 2011 WL 231793 at *3 (D. Md. Jan. 24, 2011) (citing *id.*); *and Hosack v. Utopian Wireless Corp.*, CIV. DKC-11-0420, 2011 WL 1743297 at *5 (D. Md. May 6, 2011) (citing *Watkins*). *See also Bouthner v. Cleveland Const. Inc.*, CIV.A. RDB-11-244, 2011 WL 2976868 *7 (D. Md. July 21, 2011) (holding that a supervisor is not an employer under the Workplace Fraud Act, Md. Code, Labor & Employ., § 3–901, *et seq.*).

The Maryland Wage Payment and Collection Law defines an "employer" as "any person who employs an individual in the state." Md. Code, Labor & Employ., § 3–501(b). In *Watkins*, this Court held that "the plain language, general purpose and clear intent of the MWPCL do not support an interpretation of the word 'employer' that would include a mere supervisor of another employee." *Watkins*, 173 F. Supp. 2d at 415–16. In explaining its holding, this Court noted that the definition of "employer" for purposes of the Wage Payment and Collection Law was not as broad as the definition of "employer" for purposes of the Fair Labor Standards Act or the Maryland Wage and Hour Law, both of which included within the definition of "employer" a "person who acts directly or indirectly in the

23

interest of another employer with an employee." *Id.* (citing Md. Code, Labor & Employ., §§ 3–301(b)(2), 3–401(c)).   This Court ultimately concluded that the individual defendant named in *Watkins*, a general manager who set plaintiff's salary and had final hiring and firing approval, was not an "employer" within the meaning of the Wage Payment and Collection Law.   As Maryland Code, Labor and Employment title 9, Workers' Compensation uses an almost identical definition of "employer" as the MWPCL, this Court's interpretation of the term is the same under both statutes.   As the definition of an "employer" in title 9 does not include a "mere supervisor of another employee," *Watkins*, 173 F. Supp. 2d at 416, Hohman was not an employer of the Plaintiff.   Accordingly, the wrongful discharge claim against Defendants Kamenetz, Gay, and Hohman is DISMISSED WITH PREJUDICE.

### B.   WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

As Baltimore County was the Plaintiff's employer, this Court shall proceed to examine the Plaintiff's claim of wrongful discharge against Baltimore County.   While "actions for [wrongful or] abusive discharge are 'inherently limited to remedying only those discharges in violation of a clear mandate of public policy which otherwise would not be vindicated by [its own] civil remedy,' " *Muench v. Alliant Foodservice, Inc.*, 205 F. Supp. 2d 498, 504 (D. Md. 2002) (quoting *Makovi v. Sherwin–Williams Co.,* 561 A.2d 179, 180 (Md. 1989)), "'[d]ischarging an employee solely because that employee filed a worker's compensation claim contravenes the clear mandate of Maryland public policy.' " *Muench*, 205 F. Supp. 2d at 504 (quoting *Ewing v. Koppers Company, Inc.,* 537 A.2d 1173, 1175 (Md.1988)).   Thus, a "cause of action in tort may lie" for the wrongful discharge of an at-will employee in violation of § 9–1105.   *See Insignia Residential Corp. v. Ashton*, 755 A.2d 1080, 1080-81 (Md. 2000) (citing

*Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981)) (finding "a cause of action in tort may lie for the 'abusive discharge' of an at-will employee 'when the motivation for the discharge contravenes some clear mandate of public policy.' "). To succeed on a claim under § 9–1105, " 'an employee must allege that he or she was discharged solely and directly because of [filing a workers' compensation claim] or that his or her termination violated a recognized rule of law.' " *Muench*, 205 F. Supp. 2d at 505 (quoting *Kern v. South Baltimore General Hospital,* 66 Md.App. 441, 452, 504 A.2d 1154, 1159 (1986).

It is undisputed that Munoz was discharged. As to the causation element, Munoz contends that "Defendants[ ] terminat[ed] Plaintiff's employment solely because he filed a claim for Workers' Compensation."[2] Compl. ¶ 55. In support of this allegation, the Plaintiff incorporates by reference the statement that "[i]n terminating Munoz, [Assistant Fire Chief] Weir stated to him that he should have 'known better' than to have filed a Workers Compensation claim." *Id.* ¶ 24. Plaintiff also makes a plausible claim that the adverse action occurred against him shortly after his employer learned of the protected activity, as he was terminated on March 3, 2011, only seven days after obtaining workers' compensation, on February 24, 2011. As Munoz presents a plausible claim that he was discharged solely and directly for filing workers' compensation benefits, the Defendants' Motion is DENIED with respect to the wrongful discharge claim against Baltimore County.

---

[2] Although Plaintiff incorporates by reference the preceding sections of the Complaint, which state that the Plaintiff's perceived disability was a reason for his discharge, this Court has held that additional wrongful reasons for termination do not contradict the assertion that "the filing of a workers compensation claim is [ ] the sole reason for Plaintiff's termination." *Ford v. Rigidply Rafters, Inc.*, 999 F. Supp. 647, 649-50 (D. Md. 1998) ("Defendants' reading of § 9–1105(a) would permit an employer to avoid liability for discharging an employee for two wrongful reasons, one of which, standing alone, would support liability. The Court declines to interpret the statute in this anomalous manner.").

CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is GRANTED IN PART and DENIED IN PART. Specifically, the Motion is GRANTED as to the disability discrimination claims in Counts I and II, as to the retaliation claim under the ADA against the Baltimore County Fire Department and all individually named Defendants in Count I, and as to the wrongful discharge claim against the Baltimore County Fire Department and all individually named Defendants in Count III; and is DENIED as to the retaliation claim under the ADA against Baltimore County in Count I and as to the wrongful discharge claim against Baltimore County in Count III.   Moreover, Plaintiff's claims against the Baltimory County Fire Department and all individually named Defendants are DISMISSED WITH PREJUDICE. Finally, Plaintiff's disability discrimination claims against Baltimore County are DISMISSED WITHOUT PREJUDICE.   Accordingly, the case shall proceed on the retaliation claim under the Americans with Disabilities Act against Baltimore County set forth in Count I and on the claim of wrongful termination in violation of public policy under Maryland state law against Baltimore County set forth in Count III.


A separate Order follows.

Dated:          July 25, 2012

                                                              /s/_____

                                                              Richard D. Bennett
                                                              United States District Judge